UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| *versus* | : | CRIMINAL NO. 22-29-JWD-RLB |
| | : | |
| GRANT MCKAY DURTSCHI | : | |

**UNITED STATES' RESPONSE TO**
**DEFENDANT'S MOTION TO SUPPRESS**

**NOW INTO COURT** comes the United States of America by Ronald C. Gathe, Jr., United States Attorney, through Kristen L. Craig, Assistant United States Attorney, and Charles Schmitz, Trial Attorney, who respectfully submits this Response to *Defendant's Motion to Suppress* filed by **GRANT MCKAY DURTSCHI ("DURTSCHI")**, defendant herein, by and through Marci Blaize, counsel for the defendant, in this criminal action.

The defendant has moved this Honorable Court to suppress non-custodial statements made to case agents when he was questioned during the execution of a search warrant at his residence. The defendant's primary argument is that his incriminating statements should be suppressed because he was not advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966). Notwithstanding that the defendant was not in custody during the statement, the defendant asserts that he was never advised of his right to remain silent, or his right to have an attorney present during questioning. The United States respectfully asserts that the defendant's motion should be denied because he was not in custody when he voluntarily gave it.

**I.   FACTUAL BACKGROUND**

On or about August 2021, the FBI obtained information that **DURTSCHI**, a photographer and resident of Lewisville, Texas, was taking sexually explicit photographs of minors under the guise of "child modeling."   **DURTSCHI** advertised and sold these photos on his Instagram pages to a

1

target audience composed almost exclusively of adult men, including known sex offenders and admitted pedophiles. Through subpoenas, agents learned that images were being uploaded to **DURTSCHI's** two Instagram pages from an IP address registered to **DURTSCHI's** home located at 708 Summit Ridge, Lewisville, Texas. The FBI obtained a search warrant for **DURTSCHI's** residence, and subsequently served the search warrant on March 8, 2022.

That day, agents from the Baton Rouge and Dallas Field offices, along with patrol officers with the Lewisville Police Department, entered **DURTSCHI's** residence at approximately 6:01 a.m. FBI agents knocked on the door and announced their presence. **DURTSCHI** and his son, Ian Durtschi, were the only occupants of the home. For officer safety purposes and per protocol, **DURTSCHI** was placed in handcuffs briefly while the home was secured. As agents will testify, **DURTSCHI** was provided with a blanket while he waited outside for the home to be cleared. Once the home was secured, the handcuffs were removed.

Agents will also testify that they allowed **DURTSCHI** to change clothes and asked if he would be willing to speak to them while they conducted the search. **DURTSCHI** agreed. The agents suggested they have the conversation in unmarked police car outside the home because there was no place inside the home where agents could speak to him privately. During the interview, which was recorded, **DURTSCHI** sat in the front seat of the vehicle, while the two female agents conducting the interview sat in the front and back seats. **DURTSCHI** was not handcuffed or physically restrained in any manner. He was given water, and he was allowed bathroom breaks as requested. For officer safety, **DURTSCHI** was supervised inside of his home during the bathroom breaks.

A full recording of the interview will be offered at the hearing on this matter. As the Court will see in the recording, **DURTSCHI's** demeanor was aloof and, at times, condescending and borderline confrontational. He did not appear scared, concerned, or unsure. Agents maintained a line of questioning that was polite, calm, and direct. Agents told **DURTSCHI** that their purpose was

to gather evidence to determine whether a crime had been committed. Although the interview ultimately lasted approximately two (2) hours, **DURTSCHI** made incriminating statements within the first twenty (20) minutes. Specifically, **DURTSCHI** admitted to taking sexually explicit photos of a minor, identified herein as VICTIM-1, and to selling those photographs for profit. He also discussed the location of various photoshoots, and the fact that VICTIM-1 he and VICTIM-1's mother placed VICTIM-1 in sexualized poses. In fact, **DURTSCHI** spent a large portion of the interview offering incriminating statements against other individuals – not just himself. The interview ended when **DURTSCHI** requested a final bathroom break. Agents left the residence, without arresting **DURTSCHI** upon completion of the search.

Eight days after the execution of the search warrant, **DURTSCHI** bought a one-way ticket to the Philippines for the following day. He was arrested in the San Francisco airport on his way out of the country on a criminal complaint.

## II. PROCEDURAL BACKGROUND

On March 17, 2022, **DURTSCHI** was arrested on a criminal complaint in the Northern District of California, Case 3:22-mj-70339-MAG (N.D. Cal.), and ultimately removed from the Northern District of California to the Middle District of Louisiana. On April 29, 2022, a federal grand jury returned an Indictment that charged **DURTSCHI** in Count One with production and attempted production of child pornography, in violation of 18 U.S.C. §2251(a) and (c); and in Count Two with distribution of child pornography, in violation of 18 U.S.C. §2252A(b)(1). On May 25, 2022, the defendant was arraigned and pleaded not guilty. (Rec. Doc. 16). The court issued a scheduling order on June 17, 2022, setting the deadline for filing substantive motions on July 15, 2022. (Rec. Doc. 17).

The instant Motion to Suppress, which the United States opposes, was filed on July 15, 2022. (Rec. Doc. 21).

### III.    LAW AND ARGUMENT

Pursuant to *United States v. Miranda*, 384 U.S. 436 (1966), a suspect must be read his *Miranda* rights prior to a "custodial interrogation" by law enforcement. *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988). "A suspect is . . . 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* at 596. "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *J.D.B. v. N. Carolina*, 564 U.S. 261, 270 (2011).

To determine whether or not an individual was in custody for *Miranda* purposes, the Fifth Circuit has "repeatedly considered key details" such as (1) "the location of the questioning," (2) "the amount of restraint on the individual's physical movement," (3) any "statements made by officers regarding the individual's freedom to move or leave," (4) "the accusatory, or non-accusatory, nature of the questioning," and (5) "the length of the questioning." *United States v. Gonzalez*, 814 F. App'x 838, 842 (5th Cir. 2020), quoting *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015) (collecting cases). In essence, a determination of whether a defendant is "in custody" depends on the "totality of circumstances." *California v. Beheler*, 463 U.S. 1121, 1125, (1983).

As explained below, the United States believes that the recorded interview, along with the agent testimony, will establish that the defendant was not in custody at the time the interview took place.

4

### 1. Location of the Questioning

The first factor, the location of the questioning, suggests that the interview was non-custodial. The United States Supreme Court has found that interviews in a suspect's home are generally non-custodial. *See Beckwith v. United States*, 425 U.S. 341 (1976). Similarly, district courts, including the Fifth Circuit, have consistently found that even an interview "close to the [suspect's] home, in a car subject to public scrutiny" indicates that the defendant was not in custody. *See Wright,* 777 F.3d at 777; *See also United States v. Michalik*, 5 F.4th 583, 588 (5th Cir. 2021), cert. denied, 142 S. Ct. 910, 211 L. Ed. 2d 612 (2022); *United States v. Gonzales,* 814 Fed. Appx. 838, 843 (5th Cir. 2020). Such is the case here. Two female agents interviewed **DURTSCHI** in an unmarked police vehicle parked in front of his home during the execution of the search warrant. The location was chosen strictly for privacy concerns because there was no other appropriate location inside the residence while the search was being conducted. For the duration of the interview, the defendant sat, without handcuffs, in the front passenger seat of the vehicle, while the agents sat in the driver's seat and back seat. Accordingly, the location of the questioning supports the government's position that the defendant was not in custody and thus a *Miranda* warning was not required.

### 2. Restraint on Movement

The second factor, the degree of restraint on the defendant's movement, must be evaluated in the context of the circumstances surrounding the questioning. The U.S. Supreme Court has opined that detention of individuals during the execution of a search warrant is "substantially less intrusive" than an arrest. *Michigan v. Summers*, 452 U.S. 692, 702 (1981). The Court distinguished this type of restraint on an individual's movement by noting, among other things, that such a detention is "not likely to be exploited by the officer or unduly prolonged in order to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention." *Id.* at 701. In these situations, district courts have found interrogations non-custodial even

when the defendant's movement has been restrained in some manner.[1]  Nonetheless, if the court concludes that "an individual's freedom of movement" was curtailed, then it must ask "the additional question whether the relevant environment presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Gonzales* at 842.

In this case, **DURTSCHI** was not handcuffed or physically restrained during the interview. Although he was temporarily handcuffed while the home was secured, he was promptly un-handcuffed, and he was not handcuffed during the interview itself. This brief restraint does not undermine the lack of physical restraint while questioned. *See e.g. United States v. Salinas,* 543 F. App'x 458, 465 (5th Cir. 2013) (explaining that "temporary detention by itself" does not "automatically rise to the level of custodial interrogation"). Agents offered **DURTSCHI** water, and the interview was suspended to allow him bathroom breaks upon request. In short, **DURTSCHI**'s movement was only restrained to the extent necessary to ensure officer safety during the execution of the warrant, he was promptly un-cuffed, and was not restrained during the interview itself.

3. <u>Statements made regarding defendant's freedom to move or leave</u>

Although **DURTSCHI** was never arrested, the agents did not discuss, either way, his custodial status. The agents did, however, inform **DURTSCHI** that the purpose of the interview was investigatory, namely, to gather evidence of a potential crime. Further, **DURTSCHI** made statements during the interview that suggest he knew he was not in custody. **DURTSCHI** told Special Agent Bobo that he was "just here to listen." Later, **DURTSCHI** told agents to be more specific with their questions: "you tell me [VICTIM-1], I can tell you all about [VICTIM-1]. You tell me [VICTIM-2], I can tell you all about [VICTIM-2]". **DURTSCHI's** control over the direction of the questioning

---

[1] *See e.g. United States v. Axsom*, 289 F.3d 496 (8th Cir. 2002) (holding that an interview was not custodial even though the defendant was not allowed to get his own glass of water, and was followed wherever he went inside his home by officers executing a search warrant); *United States v. Streifel*, 781 F.2d 953 (1st Cir. 1986) (holding that persons detained by officers securing the scene while waiting for a search warrant were detained in the Fourth Amendment sense, but were not in custody under Miranda. This was not a restraint comparable to a formal arrest, even though the defendants were told that they could not leave until one of the officers returned.).

6

contradicts his assertion that he was unaware of his right to remain silent. Finally, **DURTSCHI**'s demeanor and attitude during the questioning was inconsistent with someone who believed he was under arrest.

    4.    Nature of the questioning

In this case, the questioning was respectful and non-accusatory. The interview, which was recorded and will be offered into evidence at a hearing, shows that the agents' demeanor was respectful**.** For example, early in the interview, Agent Bobo asked **DURTSCHI** if they could discuss the complaints that he lodged with the FBI. **DURTSCHI** responded, "we can talk about whatever you want." In another instance, **DURTSCHI** believed that Agent Bobo misquoted him, and Agent Bobo promptly apologized. This type of discourse occurred throughout the interview, even when **DURTSCHI** appeared agitated and/or combative. As such, the nature of the questioning does not support the defendant's position that the interrogation was custodial.

    5.    Length of the Questioning

Generally, the fact that an interrogation lasts up to two (2) hours does not render the interrogation custodial *per se. See United States v. Harrell,* 894 F.2d 120, 124 (5th Cir. 1990). This is especially true when an individual offers incriminating statements early in the detention, as district courts recognize that some investigatory questioning is permissible without invoking *Miranda* concerns. *Id.* Here, within the first twenty minutes of the interview, **DURTSCHI** admitted to taking sexually explicit photos of minors, specifically, VICTIM-1; to the location(s) of the photoshoot(s) in Florida, Texas, and Louisiana; to posing VICTIM-1 in sexualized positions (i.e., "doggie style" on a bed); and to selling those photos to individuals he knew to be pedophiles, among other things. **DURTSCHI** spent a large portion of the interview offering incriminating statements not against himself, but against other individuals involved in the investigation. Finally, the two (2) hour time span also included bathroom breaks, and conversations unrelated to the investigation. Accordingly,

7

the length of the questioning does not support the defendant's argument that the interrogation was custodial in nature.

In light of the above, the United States respectfully suggests that, given the circumstances, a reasonable person would have felt free to terminate the interview and leave. Accordingly, United States maintains that the defendant's statements should not be suppressed because they were made in response to a non-custodial interview during the execution of a search warrant.

## IV.   CONCLUSION

For the reasons stated herein, the United States respectfully requests that this Court deny the defendant's Motion to Suppress.

UNITED STATES OF AMERICA, by

RONALD C. GATHE, JR.
UNITED STATES ATTORNEY


/s/ Kristen Lundin Craig
Kristen Lundin Craig, LBN 32565
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0561
E-mail: kristen.craig@usdoj.gov


Charles Schmitz, CT BN 429457
Trial Attorney U.S. Department of Justice
Child Exploitation and Obscenity Division
1301 New York Avenue NW, Suite 1100
Washington, DC 20530
Telephone: 202-913-4778
Email: charles.schmitz2@usdoj.gov